[Cite as *State v. Carano*, 2013-Ohio-1633.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26544 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOHN M. CARANO | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 08 2145 |

DECISION AND JOURNAL ENTRY

Dated: April 24, 2013

WHITMORE, Judge.

{¶1} Defendant-Appellant, John Carano, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} At approximately 10:30 p.m., Summit County Sheriff's Deputy Wesley Dobbins observed a white van weave and cross the double yellow center line on Manchester Road. He continued to follow the van and observed it make a wide, slow turn onto Hyfield Avenue. When the van did so, it crossed onto the left-hand side of the road and continued to travel partially on that side of the road. Deputy Dobbins then decided to follow the van and stop it.

{¶3} Deputy Dobbins stopped the van just as it pulled into a driveway on Lake Vista Road and soon identified the driver as Carano. When he spoke with Carano, Deputy Dobbins observed that Carano's eyes were watery and bloodshot. He also detected a strong odor of alcohol about Carano. Carano admitted to Deputy Dobbins that he had been drinking, failed the

first field sobriety test that he took, and refused to submit to any more testing after he was unable to complete the second test. Carano also refused to submit to a breathalyzer test.

{¶4} A grand jury indicted Carano on each of the following counts: (1) operating a vehicle while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a); (2) OVI, in violation of R.C. 4511.19(A)(2); and (3) lanes of travel/weaving, in violation of R.C. 4511.25. The first OVI count also contained an attendant specification based on Carano's previously having been convicted of five or more OVI offenses in the last 20 years, in violation of R.C. 2941.1413. Carano filed a motion to suppress, and the trial court held a suppression hearing. Subsequently, the court denied Carano's motion and the matter went to trial. A jury found Carano guilty on both OVI counts, including the attendant specification, and the trial court found him guilty of the lanes of travel/weaving count. The court merged Carano's OVI convictions and sentenced him to three and a half years in prison.

{¶5} Carano now appeals and raises seven assignments of error for our review. For ease of analysis, we combine several of the assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN DENYING MR. CARANO'S MOTION TO SUPPRESS.

{¶6} In his first assignment of error, Carano argues that the trial court erred by denying his motion to suppress. Specifically, he argues that Deputy Dobbins lacked reasonable suspicion to stop his van. We disagree.

{¶7} The Ohio Supreme Court has held that:

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and

evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. *Accord State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 6 (*Burnside* applied). Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

{¶8} To justify an investigative stop, an officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In evaluating the facts and inferences supporting the stop, a court must consider the totality of the circumstances as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976). A totality of the circumstances review includes consideration of "(1) [the] location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances." *State v. Biehl*, 9th Dist. No. 22054, 2004-Ohio-6532, ¶ 14, citing *Bobo* at 178-179. "Where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *." (Internal quotations, citations, and emphasis omitted.) *State v. Campbell*, 9th Dist. No. 05CA0032-M, 2005-Ohio-4361, ¶ 11.

{¶9} Deputy Dobbins, a 17-year veteran, testified that he first observed Carano's van while traveling south on Manchester Road at approximately 10:25 p.m. He testified that he was a member of his department's OVI Task Force and was specifically on the lookout for intoxicated drivers that night as part of an OVI saturation patrol. Deputy Dobbins was following a line of several cars when he observed a white van drifting within its lane. He then saw the van "hit the double line a couple of times" before "drift[ing] out to the left, just over the double yellow line and then back into the lane." The van then turned right onto Hyfield Avenue with the vehicle directly behind it making the same turn and following closely. Deputy Dobbins stated that he found the presence of the second vehicle significant because, in his experience, intoxicated drivers often have people drive behind them to make sure that they get home safely and those people "[g]enerally follow them pretty close[ly]."

{¶10} As the van turned right onto Hyfield Avenue, Deputy Dobbins observed it turn widely so that it crossed onto the left-hand side of the road. He decided to pursue the van and executed a U-turn on Manchester Road. After he turned onto Hyfield Avenue, he saw the van was still traveling outside of its lane. Deputy Dobbins admitted that Hyfield Avenue does not have a center line painted on the road, but testified that, if it did, the van would have been traveling about half a car width over the line. Meanwhile, the car following closely behind the van stayed within its lane of travel. Deputy Dobbins activated his lights as the van pulled into a driveway. He then identified the driver as Carano.

{¶11} Carano argues that Deputy Dobbins lacked reasonable suspicion to stop his van because he drove it down Hyfield Avenue in a reasonable manner. According to Carano, because his lane of travel was obstructed by ruts within the road, he was permitted to travel onto the left-hand side of Hyfield Avenue to avoid the ruts. *See* R.C. 4511.25(A)(2). There was no

testimony at the suppression hearing, however, about ruts in the road. *See State v. Jackson*, 9th Dist. No. 26234, 2012-Ohio-3785, ¶ 14 ("Our review of a trial court's suppression ruling is limited to the testimony produced at the suppression hearing."). Deputy Dobbins was the only witness to testify. Moreover, he testified that he observed Carano's van weaving before Carano even got to Hyfield Avenue.

{¶12} In his recitation of the facts, Carano insists that Deputy Dobbins only saw him make a wide turn onto Hyfield Avenue and travel left of center while on that road. Carano attributes Deputy Dobbins' testimony about the weaving he observed on Manchester Road to another vehicle. According to Carano, Deputy Dobbins saw that vehicle weave, not Carano's van, but then decided to follow Carano's van when he observed it make a wide turn. We do not agree with Carano's reading of the record.

{¶13} Deputy Dobbins' testimony was that, while traveling southbound on Manchester Road, he saw two different vehicles ahead of his cruiser weave. One of those vehicles was Carano's van. Deputy Dobbins specifically testified that he "observed a vehicle that was weaving a bit[,] [s]o [he] decided to stop him and see what happens." He explained that by "weaving a bit," he meant that he saw the vehicle going back and forth to the double yellow line and then to the fog line. Carano's van was the only vehicle that Deputy Dobbins stopped. Accordingly, the weaving he described pertained to Carano's van, not the other vehicle. Deputy Dobbins then saw the van drift outside its lane again. In describing his observations, Deputy Dobbins testified:

> I [saw] a vehicle, want to see what I have. I have a van, white van, it was probably two to three vehicles ahead of me, probably behind that vehicle. I [saw] a van southbound. Again, it drifted out to the left, just over the double yellow line and then back into the lane.

Deputy Dobbins described having to decide which vehicle to pursue, given that both had weaved. The van then "took a wide, slow turn on the wrong side of the road." At that point, Deputy Dobbins chose to pursue the van.

{¶14} Deputy Dobbins' testimony was such that he observed Carano's van weave and leave its lane of travel on both Manchester Road and Hyfield Avenue. On Manchester Road, in particular, Deputy Dobbins testified that he observed the van cross over the double yellow line. There was competent, credible evidence in the record, therefore, to support the trial court's finding that Deputy Dobbins saw Carano weave outside his lane of travel; an act that constituted a traffic violation. *See* R.C. 4511.25(A) (requiring vehicles to be driven on the right half of the roadway). This Court has held that "[a] police officer's observation of a person violating a traffic law is sufficient to give rise to the officer's reasonable conclusion that the person is engaged in criminal activity." *Campbell*, 2005-Ohio-4361, at ¶ 11. Because Deputy Dobbins observed Carano commit a minor traffic violation, he performed a constitutionally valid stop of his van. *Id.* Carano's argument that the court erred by denying his motion to suppress lacks merit. Consequently, his first assignment of error is overruled.

Assignment of Error Number Two

THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT HIS CONVICTION FOR WEAVING.

{¶15} In his second assignment of error, Carano argues that his lanes of travel/weaving conviction is based on insufficient evidence. We disagree.

{¶16} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

"In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶17} The lanes of travel/weaving statute provides, in relevant part:

Upon all roadways of sufficient width, a vehicle * * * shall be driven upon the right half of the roadway, except * * * [w]hen an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard * * *.

R.C. 4511.25(A)(2). Carano argues that he was forced to leave his lane of travel when turning onto and traveling down Hyfield Road because the road was in poor condition. According to Carano, "deep ruts" in the road constituted obstructions for purposes of R.C. 4511.25(A)(2). Therefore, he argues that he was justified in driving partially on the left-hand side of the road and his conviction is based on insufficient evidence.

{¶18} Much like he did at the suppression hearing, Deputy Dobbins testified at trial that he observed Carano's van cross the double yellow center line on Manchester Road before coming back into its lane. Only after Deputy Dobbins saw the van weave on Manchester Road did he then see it make a wide turn onto Hyfield Avenue and decide to follow it. It is not necessary for us to discuss the testimony about the road conditions on Hyfield Avenue because there was testimony that Carano crossed the double yellow line on Manchester Road. Viewing the evidence in a light most favorable to the State, the trial court could have concluded that the State proved Carano's lanes of travel/weaving conviction based strictly on that testimony.

Carano's argument that his conviction is based on insufficient evidence lacks merit and his second assignment of error is overruled.

Assignment of Error Number Three

MR. CARANO WAS DENIED A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT BY IMPROPER REFERENCE TO THE LAW OF WEAVING.

{¶19} In his third assignment of error, Carano argues that he was denied a fair trial due to prosecutorial misconduct. Specifically, he argues that he was prejudiced when the prosecutor misstated the law on weaving in her closing argument. We disagree.

{¶20} In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced. *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). "[A] judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *State v. Knight*, 9th Dist. No. 03CA008239, 2004-Ohio-1227, ¶ 6, citing *State v. Carter*, 72 Ohio St.3d 545, 557 (1995). The defendant must show that, but for the prosecutor's misconduct, the jury would not have convicted him. *State v. Lollis*, 9th Dist. No. 24826, 2010-Ohio-4457, ¶ 24. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶21} "[W]hen the defendant fails to object to [] purported acts of prosecutorial misconduct, he limits appellate review to that of plain error." *State v. Veal*, 9th Dist. No. 26005, 2012-Ohio-3555, ¶ 18. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant

has established that the outcome of the trial clearly would have been different but for the alleged error." *Veal* at ¶ 18.

{¶22} Carano concedes that a plain error standard applies here because he failed to object to the statements he now argues were improper. Carano argues that the prosecutor engaged in misconduct during two segments of her closing argument. In the first segment, the prosecutor discussed Deputy Dobbins' decision to follow Carano onto Hyfield Avenue after he observed Carano make a wide turn. The prosecutor argued:

> And it doesn't matter if you're fully in the other person's lane, you're half in the lane, you're a quarter in the lane; you're not to drive in the oncoming lane of traffic, bottom line, for a good reason; right?
>
> It's not your lane and other cars could be coming.

In the second segment, the prosecutor addressed the testimony Carano set forth in his case-in-chief wherein he and one of his neighbors testified about the poor road conditions on Hyfield Avenue and how they commonly caused residents to leave their lanes of travel while driving on that road. The prosecutor argued:

> Deputy Dobbins said, not only did he watch Mr. Carano make the turn [onto Hyfield Avenue], but he saw him straighten [the van] out and continue down partially the other lane.
>
> * * *
>
> And you know what, what did your mom used to say to you? Hey, if your friends jump off a building, does that mean you do, too; right?
>
> No is the right answer. No.
>
> I don't care, just because Mr. Carano, [his neighbor] and whoever else in that neighborhood wants to drive on the wrong side of the road, doesn't make it right.
>
> It doesn't not make it a traffic violation.
>
> It doesn't not make it one of the several things this deputy observed on this night about Mr. Carano's impairment.

And Mr. Carano tells you he can drive on the correct side. He can.

He's done it and he can, right?

If there's a car there, what's he do, does he just plow into it?

No. He stays on his side.

So, it can be done.

Carano argues that the prosecutor's statements were improper because they (1) categorized leaving one's lane as a per se violation of R.C. 4511.25 when, in fact, the statute allows a driver to do so in the event of an obstruction, and (2) they somehow led the jury "to believe that the OVI charge was conclusively established."

{¶23} Initially, we note that, due to its status as a minor misdemeanor, Carano's lanes of travel/weaving charge was tried to the bench, not the jury. "There is a presumption in a bench trial that the trial judge knows and follows the law, and only considers matter properly before it." *State v. Pleban*, 9th Dist. No. 10CA009789, 2011-Ohio-3254, ¶ 45. Carano has not pointed to anything in the record that would overcome that presumption. Further, even assuming that the prosecutor's statements were somehow improper, he has not shown that he was prejudiced by them. Nothing in the record supports the conclusion that Carano's lanes of travel/weaving conviction arose strictly from his drive down Hyfield Avenue. Deputy Dobbins also testified that Carano weaved and left his lane of travel on Manchester Road. Carano never claimed that there were any obstructions on Manchester Road that kept him from staying within his lane of travel. By weaving and crossing the double yellow line on Manchester Road, therefore, Carano violated R.C. 4511.25. Carano has not shown that, but for the prosecutor's statements, he would not have been convicted of that offense.

{¶24} This Court also finds no merit in Carano's assertion that, absent the prosecutor's allegedly improper statements, the jury might not have found him guilty on his OVI counts.

Apart from his testimony about Carano's weaving, Deputy Dobbins testified that he detected a strong odor of alcohol when speaking with Carano, his eyes were watery and bloodshot, and he admitted to having "a couple" of drinks. Deputy Dobbins performed a horizontal gaze nystagmus test on Carano and testified that the results of the test indicated Carano was intoxicated. He then attempted to perform the walk and turn test on Carano, but Carano quit in the middle of the test and told Deputy Dobbins to just arrest him. Carano refused to complete any further field sobriety testing and later refused to submit to a breathalyzer. Deputy Dobbins also testified that the police found two open containers of beer in Carano's van; one on the driver's side floorboard and one in the console's cup holder on the driver's side. The record, therefore, contains a wealth of evidence in support of Carano's OVI convictions. Carano has not shown that, but for the prosecutor's arguments about weaving, the jury would not have convicted him on his OVI counts. His third assignment of error is overruled.

Assignment of Error Number Four

> THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO GRANT A MISTRIAL BASED UPON INFLAMMATORY REMARKS CONCERNING MR. CARANO'S PRIOR CONVICTIONS MADE BEFORE THE JURY AND FOR FAILING TO CONDUCT A HEARING TO DETERMINE WHETHER SAID REMARKS AFFECTED THE JURY.

{¶25} In his fourth assignment of error, Carano argues that the trial court erred by refusing to grant his two motions for a mistrial. We disagree.

{¶26} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected. Great deference is afforded to a trial court's decision regarding a motion for mistrial. Accordingly, this Court reviews the denial of a motion for mistrial for an abuse of discretion."

(Internal citations, alterations, and quotations omitted.) *State v. Howes*, 9th Dist. No. 24665, 2010-Ohio-421, ¶ 11. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶27}** Carano moved for a mistrial on two separate occasions. The first motion stemmed from the testimony of Deputy Randall Cunningham, the officer in charge of intake and booking at the Summit County Jail. Deputy Cunningham testified that he routinely records any statements suspects make during booking and, when booking Carano, he had noted one of Carano's statements. Before Deputy Cunningham testified, the State agreed that it would limit his testimony to Carano's actual statement. When Deputy Cunningham read his recorded recollection into the record, however, he read:

> Inmate states he had a few beers tonight at a friend's house in Medina and still seeing --

The transcript does not reflect the remainder of Deputy Cunningham's statement because defense counsel immediately objected and the prosecutor interjected "[t]hat's it." Defense counsel later proffered at sidebar, however, that he heard Deputy Cunningham say Carano "still seems intoxicated."

**{¶28}** Directly after defense counsel objected, the trial judge sustained the objection. She ordered that Deputy Cunningham would "repeat the relevant portion [of his testimony]" and instructed the jury that "if [they] heard anything else, * * * to disregard everything except for what the Deputy is going to repeat at this time." Deputy Cunningham then testified solely as to Carano's statement.

**{¶29}** Before cross-examination, defense counsel moved for a mistrial because the State had agreed to limit Deputy Cunningham's testimony to Carano's recorded statement, not his

personal observation of Carano at the time of booking. The trial judge noted that she had sustained defense counsel's objection because she was aware of the parties' agreement to limit Deputy Cunningham's testimony, but she personally "did not hear anything that was decipherable" after defense counsel and the prosecutor both interjected. The judge also reviewed the transcript and noted that the court reporter had not heard the remainder of the testimony. After receiving arguments from both sides, the court overruled the motion for a mistrial.

{¶30} Carano first argues that the trial court erred by refusing to grant a mistrial because the court never gave a corrective instruction to the jury. The record reflects, however, that the court gave a corrective instruction to the jury immediately after she sustained defense counsel's objection. The court had no reason to issue another corrective instruction after denying Carano's first motion for a mistrial. Moreover, we cannot conclude that the court abused its discretion by refusing to grant Carano's motion. Carano has not explained how Deputy Cunningham's statement that he "still seem[ed] intoxicated," assuming the jury even heard it, deprived him of a fair trial. Deputy Dobbins testified at length about his observations of Carano, and his testimony clearly supported the conclusion that Carano was intoxicated. At most, Deputy Cunningham's bare statement that Carano "still seem[ed] intoxicated" corroborated Deputy Dobbins' testimony. Further, the statement was brief and isolated, and the court specifically instructed the jury to disregard it. *See State v. Witcher*, 9th Dist. No. 26111, 2012-Ohio-4141, ¶ 33 ("It is well settled that juries are presumed to follow the trial court's instructions."). Given our review of the record, the court's decision to deny Carano's first motion for a mistrial was not unreasonable, arbitrary, or unconscionable.

{¶31} Carano's second motion for a mistrial stemmed from a video recording the State played. The recording depicts Carano's interactions with the deputies at the police station after

his arrest and his refusal to submit to a breathalyzer test. In one portion of the recording, the deputies briefly discuss Carano's prior convictions. Specifically, one deputy asks whether Carano has nine or eight, and the other deputy responds that he has seven. When that portion of the recording was played at trial, defense counsel immediately objected and the court spoke with the attorneys outside the presence of the jury. Carano then moved for a mistrial on the basis that the State had only charged him with having five prior convictions and any reference to seven, eight, or nine prior convictions unduly prejudiced him.

{¶32} Once again, there was discussion as to whether the jury even heard the conversation between the two deputies due to the quality of the sound in the courtroom. The trial judge then noted that she had "just watched [the video] three or four times and [she] wasn't exactly clear what was said." The State ultimately asked the court to grant defense counsel's motion to strike and give a curative instruction. After further discussion, the court instructed the jury as follows:

> Ladies and gentlemen of the jury, prior to our break we were watching this tape and we were at the point where Deputy Dobbins was reading a form to Mr. Carano, there may have been a few statements that got in following that and my instruction to you is that * * * I'm going to strike any of those statements from the record and instruct you if you heard any of that, to disregard any statements that were made after Deputy Dobbins finished reading Mr. Carano the form and the time that we are going to pick up the tape now.

The remainder of the recording was then played for the jury.

{¶33} This Court has upheld a trial court's refusal to grant a mistrial when an improper reference to a prior conviction was fleeting and promptly followed by a curative instruction. *See State v. Gary*, 9th Dist. No. 12CA0014, 2012-Ohio-5813, ¶ 29-31. Further, the Supreme Court has held that it is not necessary to declare a mistrial in such circumstances when "overwhelming evidence" establishes the defendant's guilt. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-

2961, ¶ 175. The reference to Carano's prior convictions was fleeting. It also was unclear whether the jury even heard the reference due to the sound quality of the recording in the courtroom. Moreover, the court immediately issued a curative instruction and there was an overwhelming amount of evidence to establish Carano's guilt. There was testimony that Carano's van weaved several times, his eyes were watery and bloodshot, he smelled strongly of alcohol, he admitted to having "a couple" of drinks, he failed the first field sobriety test and refused to complete the others, and two open containers were found in his van. It is also noteworthy that the jury was aware that Carano had prior convictions, as the State had to prove the existence of five prior convictions as part of its case-in-chief. Given the facts and circumstances here, we must conclude that the trial court did not abuse its discretion by denying Carano's second motion for a mistrial. Carano's fourth assignment of error is overruled.

Assignment of Error Number Five

> MR. CARANO'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE OF FIVE PRIOR CONVICTIONS USED TO ENHANCE THE CURRENT CHARGES FROM MISDEMEANORS TO FOURTH-DEGREE FELONIES.

Assignment of Error Number Six

> THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE SPECIFICATION CONCERNING OPERATING UNDER THE INFLUENCE[.]

{¶34} In his fifth and sixth assignments of error, Carano challenges the sufficiency of the evidence in support of his OVI convictions. Specifically, he argues that the Stated failed to prove his five prior convictions beyond a reasonable doubt. We disagree.

{¶35} We incorporate the sufficiency standard of review set forth in Carano's second assignment of error. R.C. 4511.19(A)(1)(a) provides that "[n]o person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of

alcohol." If a person has previously been convicted of or has pleaded guilty to five or more equivalent offenses within twenty years of the offense, that person is guilty of a fourth-degree felony OVI. R.C. 4511.19(G)(1)(d). The offense is a misdemeanor if the State does not set forth evidence of any prior convictions. R.C. 4511.19(G)(1)(a).

{¶36} "When a prior conviction actually 'transform[s] the crime itself by increasing its degree [,] * * * [t]he prior conviction is an essential element of the crime and must be proved by the state.'" *State v. Patterson*, 9th Dist. No. 09CA0014-M, 2009-Ohio-6953, ¶ 6, quoting *State v. Allen*, 29 Ohio St.3d 53, 54 (1987). R.C. 2945.75 governs prior convictions and provides as follows:

> (B)(1) Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction.

The State here relied upon R.C. 2945.75(B)(1) and introduced certified copies of judgment entries from five different cases.

{¶37} Initially, we note that Carano has not separately challenged the admission of the five judgment entries the State relied upon in a separate assignment of error. He has only challenged the sufficiency of his OVI convictions.

> The Supreme Court of Ohio has held that when reviewing the sufficiency of the evidence, an appellate court is to consider all of the evidence admitted at trial, even if the evidence was improperly admitted. *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, ¶ 19. *See also State v. Denny*, 9th Dist. No. 08CA0051, 2009-Ohio-3925, ¶ 12 ("[T]he administration of justice dictates that the appellate court review the issue of sufficiency in consideration of all the evidence presented by the State in its case in chief, whether such evidence was properly admitted or not."). Thus, [Carano] may not base his sufficiency argument on the contention that the judgment entries were improperly admitted. To the extent that [Carano] attempts to make such an argument, we overrule it.

*State v. Ward*, 9th Dist. No. 09CA009720, 2011-Ohio-518, ¶ 20. We limit our review to Carano's argument that the State failed to produce evidence sufficient to identify him as the defendant in the five judgment entries. *See id.* at ¶ 21-22.

{¶38} Carano argues that the five judgment entries the State introduced were insufficient to identify him because several of them listed different residential addresses for him. Specifically, State's Exhibits 36 and 38 contained a Tallmadge address while Exhibit 39 contained a Garfield Heights address and Exhibit 40 contained a Cuyahoga Falls address. He further argues that Exhibit 40 did not identify him because it did not contain any personal identifiers, such as a birthdate or social security number.

{¶39} Deputy Dobbins testified at trial as to Carano's date of birth and his social security number. State's Exhibits 36, 37, 38, and 39 all contain Carano's name as well as the date of birth and social security number that Deputy Dobbins attributed to him at trial. State's Exhibit 40 contains Carano's name and date of birth, but not his social security number, as that space is blacked out with marker. In addition to the certified copies of the judgment entries, Deputy Dobbins also testified that, through his investigation, he had confirmed Carano had five prior OVI convictions in the last 20 years.

{¶40} In relying upon certified copies of judgment entries, the State is required to produce "evidence sufficient to identify the defendant named in the entry as the offender." R.C. 2945.75(B)(1). Deputy Dobbins' testimony sufficed to identify Carano as the defendant in each of the certified judgment entries. *See Ward* at ¶ 21-22 (defendant's full name and date of birth on certified judgment entries constituted sufficient identifiers for purposes of R.C. 2945.75(B)(1)). All of the entries matched Carano's name and date of birth and four of them also matched his social security number. Additionally, Deputy Dobbins testified that, through

his own investigation, he had confirmed the fact that Carano had five prior OVI convictions in the last 20 years. Carano's argument that the State failed to set forth sufficient evidence of his prior convictions lacks merit. His fifth and sixth assignments of error are overruled.

Assignment of Error Number Seven

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GIVING AN INPROPER (sic) INSTRUCTION TO THE JURY ON THE OFFENSE OF OPERATING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS AS ALLEGED IN COUNT ONE OF THE INDICTMENT.

{¶41} In his seventh assignment of error, Carano argues that the trial court committed plain error in its instructions to the jury. We disagree.

{¶42} Generally, a defendant's failure to object to an allegedly erroneous jury instruction limits any review of the alleged error to a review for plain error. *State v. Johnson*, 9th Dist. No. 25525, 2011-Ohio-3941, ¶ 20. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶43} Carano takes issue with the following jury instruction:

> In Count One of the indictment [Carano] is charged with operating under the influence of alcohol or drugs.

> Before you can find [Carano] guilty, you must find beyond a reasonable doubt that on or about the 6th day of August, 2011, * * * [Carano] operated a vehicle, to wit, a van on Lake Vista Drive, while under the influence of alcohol, * * * and [Carano] was previously convicted of or pled guilty, within the past 20 years, to 5 or more violations *of Division (A) or (B) of Section 4511.10 of the Revised Code*, a municipal ordinance related to [OVI], * * *, a municipal ordinance relating to operating a vehicle with a prohibited concentration of alcohol in the blood, breath, or urine, Section 2903.04 of the Revised Code in a case in which the offender was subject to the sanctions described in Division (D) of that Section, or Section 2903.06, 2903.07, or 2903.08 of the Revised Code or a municipal ordinance that

> is substantially similar to Section 2903.07 of the Revised Code in a case in which
> the jury or judge found that the offender was under the influence of alcohol * * *,
> in violation of Section 4511.19(A)(1)(a) of the Revised Code.

(Emphasis added.) R.C. 4511.10 pertains to the placement and maintenance of traffic control devices on state highways.

{¶44} Carano's argument is confusing at best. First, he appears to argue that the court's instruction prejudiced him because the State "presented no evidence relating to traffic control devices at trial." Although the court referred to R.C. 4511.10 in its jury instruction, the reference was clearly a mistake. R.C. 4511.10 does not have any subsections, so it would be impossible to have a violation of Division (A) or (B) of that section. Moreover, the entirety of the court's instruction makes clear that the court was discussing prior alcohol- or drug-related offenses, not the placement or maintenance of traffic control devices. The court also reviewed the verdict forms with the jury. Both OVI verdict forms, as completed, read:

> We, the Jury, further find that Defendant, JOHN M. CARANO, was previously
> convicted of, within the past twenty years, five or more violations of Operating
> Under the Influence of Alcohol or Drugs.

The jury specifically found, therefore, that Carano had five prior OVI or drug-related convictions. Carano has not shown that the court's erroneous reference to R.C. 4511.10 in its instruction prejudiced his substantial rights.

{¶45} Next, Carano appears to argue that the court's instruction prejudiced him because, when combined with the testimony the State presented about his refusal to submit to a breathalyzer test, it somehow created a presumption that he was guilty of violating R.C. 4511.19(A)(1)(a). A court may issue a refusal instruction when a person is arrested for OVI, refuses to take a chemical test of his breath, and "the reason given for the refusal is conditional, unequivocal, or a combination thereof." *State v. Simin*, 9th Dist. No. 26016, 2012-Ohio-4389, ¶

42, quoting *Maumee v. Anistik*, 69 Ohio St.3d 339 (1994), syllabus. The court here did issue a refusal instruction, but Carano has not challenged that instruction in his assignment of error. The only portion of the court's instruction that he challenges is the portion quoted above. We fail to see how that portion of the court's instruction created any type of presumption of guilt. Therefore, we reject Carano's second argument. Carano's seventh assignment of error is overruled.

### III

{¶46} Carano's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

BETH WHITMORE
FOR THE COURT

MOORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

DAVID M. WATSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.