[Cite as *State v. Greer*, 2014-Ohio-2370.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

MONTREILL D. GREER

    Appellant

C.A. No.    26996

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 13 01 0291

DECISION AND JOURNAL ENTRY

Dated: June 4, 2014

MOORE, Judge.

{¶1}    Defendant, Montreill Greer, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    On January 28, 2013, Officer David Gupta of the Akron Police Department responded to a call regarding a suspect with a gun at an apartment complex in Akron, Ohio. When the officer and his partner approached the location, Mr. Greer was walking on the driveway of the apartment building. The officers stopped Mr. Greer and patted him down. During the pat-down search, the officers felt a firearm in Mr. Greer's pocket and removed it. The officers then arrested Mr. Greer for carrying a concealed weapon.

{¶3}    Thereafter, the Summit County Grand Jury indicted Mr. Greer on one count of carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), a felony of the fourth degree. Mr. Greer pleaded not guilty at his arraignment, and he later filed a motion to suppress evidence.

The trial court denied the motion, and Mr. Greer amended his plea to no contest. The trial court found Mr. Greer guilty and imposed sentence. Mr. Greer timely filed a notice of appeal, and he now raises one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE AKRON POLICE ILLEGALLY SEARCHED [MR.] GREER, A RANDOM AFRICAN-AMERICAN PEDESTRIAN, WHO FELL OUTSIDE THE SUSPECT'S PRE-STOP PHYSICAL DESCRIPTION BY 9 INCHES AND NEARLY 100 POUNDS; LACKED CLOTHES ARTICLES APPARENT IN THE SUSPECT'S PRE-STOP ACCOUTREMENT DESCRIPTION; AND WAS WALKING ON A COMPLETELY DIFFERENT STREET THAN THE SUSPECT'S PRE-DESCRIBED LOCATION.

{¶4} In his sole assignment of error, Mr. Greer argues that the trial court erred by failing to grant his motion to suppress the evidence because it was obtained as the result of an unjustified stop. We disagree.

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. *Accord State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 6 (*Burnside* applied).

{¶5} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution prohibit law enforcement from conducting unreasonable and warrantless searches and seizures. When a police officer stops and detains an individual, the stop is a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Courts are required to exclude evidence obtained by means of searches and

seizures that are found to violate the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 657 (1961).

{¶6} To comply with the provisions of the Fourth Amendment in the context of a warrantless investigative stop, a law enforcement officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The propriety of an investigative stop should be reviewed in light of the totality of the circumstances. *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. The totality of the circumstances are "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Carano*, 9th Dist. Summit No. 26544, 2013-Ohio-1633, ¶ 8, quoting *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976). "A totality of the circumstances review includes consideration of '(1) [the] location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances.'" *Carano* at ¶ 8, quoting *State v. Biehl*, 9th Dist. Summit No. 22054, 2004-Ohio-6532, ¶ 14, citing *Bobo* at 178-179.

{¶7} In his merit brief, Mr. Greer couches his assignment of error and argument in support in terms that the police officers illegally "searched" him. However, his argument in his suppression motion, and his argument in support of his assignment of error, appear to pertain to the legality of the initial stop of Mr. Greer because, as Mr. Greer argues, his physical appearance and his location at the time of the stop did not correspond to the description and location of the suspect as reported in the dispatch log. Accordingly, we will limit our discussion to the investigatory stop of Mr. Greer.

{¶8} At the hearing on Mr. Greer's motion, Officer Gupta explained that, when the officers are dispatched, they receive dispatch notes on a monitor in their cruiser. The dispatch notes in this case included the following:

* * *

| | |
|---|---|
| male left front entrance with | 19:19:42 |
| a gun – security states he | 19:19:55 |
| pulled a gun on female in apt | 19:20:06 |
| there | 19:20:07 |
| caller is security officer here | 19:20:15 |
| male outside now | 19:20:19 |
| P.D. Response area is 10 | 19:20:31 |
| susp is BM 508-510/160 | 19:20:51 |
| wearing dark jkt | 19:21:01 |
| dark pants or jeans | 19:21:10 |
| security did not actually see the weapon | 19:21:25 |
| just outside 1180 Rentar Ln | 19:21:42 |
| appears to be waiting for a ride | 19:21:58 |
| hood is up, possibly wearing a beanie cap under it | 19:22:11 |
| lighter color hoodie under dark jkt | 19:22:46 |
| walking S/B twds Thornton on Manchester Rd | 19:23:26 |
| apprehension | 19:23:29 |

* * *

{¶9} Based upon the dispatch notes, Mr. Greer maintains that there was no reasonable articulable suspicion to stop him. First, Mr. Greer points out a significant discrepancy between

his height and weight and that of the suspect. As set forth in the notes, the suspect was reported as 5'8" to 5'10" tall, weighing 160 pounds. At the hearing, the officer acknowledged that Mr. Greer is 6'5" tall and weighs 250 pounds. Mr. Greer also maintains that he "lacked clothes articles apparent" in the description, which appears to refer to the hoodie and beanie set forth in the dispatch notes. In addition, Mr. Greer argues that the police officers stopped him on Windsor Lane, although the dispatch notes indicated that the suspect was walking southbound towards Thornton on Manchester Road.

{¶10} At the suppression hearing, Officer Greer testified that he was aware from the dispatch notes that the suspect was an African-American male wearing a dark coat, and, a few seconds before they reached the scene, a note was added stating that the suspect was leaving the building at that time. When the officers reached the scene, they pulled onto the end of the driveway to the building, where they saw an African-American male with a dark coat walking down the driveway, "and he was the only person on the driveway at the time." Although Mr. Greer does not share the height and weight description of the suspect as set forth in the dispatch notes, Officer Gupta testified that he did not recall seeing the height and weight description prior to stopping Mr. Greer. He further testified that, in his experience, height and weight descriptions provided to dispatch can be inaccurate. In regard to the other clothing of the suspect as set forth in the dispatch notes, the transcript is devoid of any reference to what Mr. Greer was wearing under his dark jacket when the police officers stopped him, and we cannot say that he "lacked" those clothing articles. Further, in regard to Mr. Greer's location, Officer Gupta affirmed that the dispatch notes do provide that the suspect was walking along Manchester Road, and Mr. Greer was stopped on Windsor Lane. However, the officer specifically testified that, just seconds prior to stopping Mr. Greer, he had received the dispatch note that the suspect was at

that time outside of the apartment building. The officer concluded that the portion of the notes that indicated that the suspect was walking on Manchester Road toward Thornton probably was received *after* the officers left the car to stop Mr. Greer. Therefore, despite the discrepancies, based upon the totality of the circumstances, including Mr. Greer's sole presence on the driveway outside of the apartment building, and his race, gender, and dark jacket, we conclude that Officer Gupta had a reasonable suspicion of criminal activity to support the investigative stop. *See Carano*, 2013-Ohio-1633, at ¶ 8 (totality of the circumstances includes review of "(1) [the] location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances").

{¶11} Mr. Greer has further argued that the trial court improperly relied on the fruits of the search to justify the stop. In its order denying his motion to suppress, the trial court appeared to rely on the fact that Mr. Greer "had a gun on him at the time he was patted down" as justifying the stop. We agree that "additional information obtained by law enforcement after the stop cannot be used to retroactively support a reasonable and articulable suspicion of criminal activity." *State v. Hipp*, 5th Dist. Holmes No. 12CA013, 2013-Ohio-1684, ¶ 65; *State v. Williams*, 55 Ohio St.2d 82, 86 (1978) ("a search or seizure, illegal at inception, cannot be legitimatized by the results thereof"). However, we conclude that, without reference to Mr. Greer's possession of a gun, and based only upon the properly considered factors available at the time of the stop, as discussed above, there existed a reasonable suspicion of criminal activity to justify the stop.

III.

{¶12} Accordingly, Mr. Greer's sole assignment of error is overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

SARAH HULBURT, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.