[Cite as *State v. Freudeman*, 2016-Ohio-908.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27704 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| COURTNEY L. FREUDEMAN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2014 05 1235 (B) |

DECISION AND JOURNAL ENTRY

Dated: March 9, 2016

MOORE, Judge.

{¶1} Defendant-Appellant Courtney Freudeman appeals from the judgment of the Summit County Court of Common Pleas. We affirm.

I.

{¶2} On April 30, 2014, around midnight, the vehicle Ms. Freudeman was driving was stopped by police shortly after she left the McDonald's restaurant parking lot in Akron. Ms. Freudeman, who had a suspended driver's license, was arrested, and drugs and drug paraphernalia were found during a search of the vehicle. Ms. Freudeman was indicted on one count of aggravated possession of drugs, a fifth-degree felony, one count of possessing drug abuse instruments, a first-degree misdemeanor, and one count of driving under suspension, a first-degree misdemeanor.

{¶3} Ms. Freudeman filed a motion to suppress asserting that the police lacked reasonable suspicion to stop the vehicle. After a hearing, the trial court denied the motion to

suppress. Subsequently, Ms. Freudeman entered a plea of no contest to the indictment. The trial court sentenced her to an aggregate term of 12 months in prison, but suspended it on the condition that she complete two years of community control.

{¶4} Ms. Freudeman has appealed, raising a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERR[ED] IN FAILING TO GRANT MS. FREUDEMAN'S MOTION TO SUPPRESS[.]

{¶5} Ms. Freudeman argues in her sole assignment of error that the trial court erred in denying her motion to suppress. Specifically, she asserts that police lacked reasonable suspicion to stop the vehicle.

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶6} "The investigatory stop of an automobile is a seizure for purposes of the Fourth Amendment and, consequently, must be based on a law enforcement officer's reasonable suspicion 'that a motorist has committed, is committing, or is about to commit a crime.'" *State v. Dellagnese,* 9th Dist. Summit No. 27492, 2015-Ohio-4349, ¶ 6, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7. "In justifying the stop, the officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Dellagnese* at ¶ 6, quoting *Terry v. Ohio*, 392 U.S. 1, 21

(1968). "The reasonableness of the officer's actions is evaluated in light of the totality of the circumstances surrounding the stop." *Dellagnese* at ¶ 6, citing *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus. "The totality of the circumstances are viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." (Internal quotations and citations omitted.) *State v. Greer,* 9th Dist. Summit No. 26996, 2014-Ohio-2370, ¶ 6. "A totality of the circumstances review includes consideration of (1) [the] location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances." (Internal quotations and citations omitted.) *Id.* We remain mindful that "[r]easonable suspicion is something less than probable cause." (Internal quotations and citations omitted.) *State v. Caynon,* 9th Dist. Summit No. 26559, 2013-Ohio-2789, ¶ 12.

{¶7} At the suppression hearing, Officer James Rea of the Akron Police Department, who had been a police officer for nearly 18 years at the time, testified to the events surrounding the investigatory stop. On April 30, 2014, Officer Rea was working the 7:00 pm to 3:30 am shift in the Ellet district, an area he was not used to patrolling. However, previously he was part of a parking lot interdiction team that targeted drug activity in area parking lots. He described the area around the McDonald's as one of the "hot spots" that was targeted by the interdiction team. He also remembered that this particular McDonald's parking lot was one of the locations that they had targeted in the past. Officer Rea explained that people who abuse drugs tend to purchase drugs and then go to the nearest parking lot to use. Officer Rea testified that during the parking lot interdiction, his team made stops as well as arrests based on activity occurring in the McDonald's parking lot in question. He estimated that three or four arrests were made from that parking lot over a period of a couple months during the parking lot interdiction.

{¶8} Around midnight, Officer Rea drove through the McDonald's parking lot and noticed there were only a few cars in the parking lot near the front of the restaurant. However, there also was someone parking a vehicle in the back corner of the parking lot near a dumpster. He noted that there were other available parking spots closer to the entrance of the McDonald's and that the spot the vehicle parked in was the corner farthest from the entrance. Officer Rea stated that, from his experience, someone who had purchased drugs would park there as it is near the exit onto Mogadore Road which leads right to the highway.

{¶9} Officer Rea parked his cruiser across the street in a closed Subway restaurant parking lot. From his location he could observe the vehicle and its two occupants because of a large overhead light near that area. Nonetheless, he was too far away to see whether the occupants were male or female. He noticed that the two individuals were "bending down, moving around and sitting up looking around, bending down, moving around, sitting up and looking." He testified that "they just kept scanning, they just kept looking." Officer Rea indicated that, in his experience, such activity was consistent with drug activity, i.e. "bending down, preparing drugs, looking at drugs."

{¶10} Officer Rea testified that the vehicle was parked in the parking lot for approximately five to seven minutes before it left. He stated that he never saw anyone exit the vehicle and no one went into the McDonald's. Officer Rea agreed that he did not stop every car that sits in a parking lot. When asked what he was looking for when deciding whether to conduct a stop, he stated that:

> I look at the location where the car was parked from prior stops and arrests. I look at nobody exited the vehicle, they stayed in one location. They parked underneath the light so * * * they could see, have the car on. They didn't park anywhere near where all the other people parked. They didn't go into McDonald's. * * * [T]heir business there wasn't for food for the McDonald's business.

{¶11} Prior to the vehicle leaving the parking lot, Officer Rea ran the license plate through the computer system and it came back as registered to a woman with the last name of Ingram, who had a valid registration and did not have any outstanding warrants. However, the in-house system also contained field interview ("FI") cards. The FI cards indicated that Ms. Freudeman had been stopped on multiple occasions driving this vehicle. Thereafter, Officer Rea ran Ms. Freudeman's name through the system and discovered that she had a suspended driver's license.

{¶12} When the vehicle left the McDonald's, Officer Rea followed it, and shortly thereafter initiated a traffic stop. At that time he discovered Ms. Freudeman was driving the vehicle, and proceeded to place her under arrest.

{¶13} Ms. Freudeman initially challenges one of the trial court's factual findings. She maintains the trial court incorrectly found that she arrived at the McDonald's after Officer Rea had already parked across the street. However, it appears her actual concern is not with the trial court's timeline of events but the fact that the timeline leads to the inference that Officer Rea observed Ms. Freudeman's entire visit to the McDonald's.

{¶14} In its entry, the trial court found as follows:

Just before midnight, [Officer] Rea drove through the McDonald's and then positioned himself in a parking lot across the street. [Officer] Rea observed that there were a few cars parked at the McDonald's near the entrance. [Officer Rea] then observed a vehicle pull into the McDonald's and park at the furthest corner of the parking lot from the restaurant entrance. * * * The passengers never left the vehicle to purchase food but rather left the parking lot after roughly five minutes.

{¶15} First we note that it is not clear from the trial court's entry when it found that Officer Rea noticed the vehicle, i.e. whether it was while he was pulling through the parking lot, or after he parked at the Subway. Overall, Officer Rea's testimony is not a model of clarity.

During his direct examination he discussed pulling through the parking lot, seeing the vehicle sitting in the parking lot, and then driving his vehicle across the street to the Subway. However, during cross-examination, Officer Rea was asked whether he knew if Ms. Freudeman went through the drive-thru and bought food, to which Officer Rea responded, "I do know that." Officer Rea was then asked whether he knew that prior to stopping the car. Officer Rea responded that, he "did know that because they parked as [he] was pulling through. They parked, [he] came off of Market and pulled through and went directly across the street." Unfortunately, Officer Rea's testimony was not further clarified by additional questions.

{¶16} Nonetheless, even though there was no specific testimony that Officer Rea observed the vehicle pull into the McDonald's, such a finding is not an unreasonable inference based on the totality of the officer's testimony. While the exchange is somewhat confusing, a reasonable inference can be made that Officer Rea drove through the parking lot at the same time Ms. Freudeman was parking the vehicle, and that he kept the vehicle under surveillance the entire time it was at McDonald's. Based on the totality of the record, and the inferences that could be reasonably made from the officer's testimony, we conclude that the *substance* of the trial court's challenged findings is supported by competent, credible evidence. *See Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8.

{¶17} Ms. Freudeman next argues that the trial court erred in concluding that Officer Rea possessed reasonable suspicion to stop the vehicle. Based on the totality of the circumstances, we do not agree.

{¶18} Officer Rea had almost 18 years of experience at the time of the stop and had been involved in parking lot drug interdictions that also involved the McDonald's parking lot at issue. He testified that, during the parking lot interdiction, stops, and approximately 3 or 4

arrests, were made based upon activity in the parking lot. Thus, he had personal knowledge that this particular parking lot was associated with drug activity. *See State v. Bobo,* 37 Ohio St.3d 177, 179 (1988). Officer Rea also observed what he considered suspicious activity that he associated with drug activity: (1) a vehicle parked in the far back corner of a parking lot near a dumpster and an overhead light, despite the fact that there were many open spaces near the entrance; (2) occupants who did not go into the McDonald's and left about five minutes after arriving; and (3) occupants who kept bending down and sitting up and looking around. *See id.* at 179-180. Moreover, while the McDonald's was still open, it was nearly midnight, a factor that also can be considered in the totality of the circumstances analysis. *See id.* at 178-179. Further, Officer Rea had information that, while the registered owner of the vehicle had a valid registration and no outstanding warrants, a person who was known to drive the vehicle, Ms. Freudeman, had a suspended driver's license.

{¶19} "In making a determination of reasonable suspicion, the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." *State v. Morton,* 9th Dist. Summit No. 25117, 2010-Ohio-3582, ¶ 9, quoting *State v. Lungs,* 2d Dist. Montgomery No. 22704, 2008-Ohio-4928, ¶ 17. "While certain events when viewed separately can appear innocent, taken together the same events may warrant further investigation." *State v. Patterson,* 2d Dist. Montgomery No. 23395, 2009-Ohio-4946, ¶ 25. Given the foregoing, we conclude that Officer Rea possessed a reasonable, articulable suspicion that Ms. Freudeman was engaged in criminal activity. Accordingly, the trial court did not err in denying her motion to suppress.

{¶20} Ms. Freudeman's assignment of error is overruled.

III.

**{¶21}** Ms. Freudeman's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

WILLIAM A. VASILIOU II, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.