*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0013p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            *v.*

ALBERT STEVEN BATES (06-2458) and
WALTER JOHN BATES (06-2460),
            *Defendants-Appellants.*

Nos. 06-2458/2460

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-80948—Arthur J. Tarnow, District Judge.

Argued: December 10, 2008

Decided and Filed: January 12, 2009

Before: MARTIN and McKEAGUE, Circuit Judges; COLLIER, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Martin J. Beres, LAW OFFICES OF MARTIN J. BERES, Clinton Township, Michigan, Harold Z. Gurewitz, GUREWITZ & RABEN, Detroit, Michigan, for Appellants. Daniel R. Hurley, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Martin J. Beres, LAW OFFICES OF MARTIN J. BERES, Clinton Township, Michigan, Harold Z. Gurewitz, GUREWITZ & RABEN, Detroit, Michigan, for Appellants. Daniel R. Hurley, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee.

1

———————————

**OPINION**

———————————

BOYCE F. MARTIN, JR., Circuit Judge.  Albert Steven Bates and Walter John Bates appeal their convictions for bank robbery and conspiracy to commit bank robbery. Because we find that no reversible error occurred at trial and that both sentences were imposed in a procedurally reasonable manner, we AFFIRM.

I.

In early 2002, Walter Bates was in severe financial distress.  He had recently been suspended from his job with the Detroit Police and he was mired in debt, in large part because of an affinity for gambling.  Searching for a way out, he formed a plan: using his knowledge of police practices he would rob banks in ways that minimized his chances of being caught.  However, he needed help to put this plan into motion.  To this end, he recruited his brother, Albert Bates, and his longtime friend, Kevin Foster-Bey.[1]

Walter's primary role was to plan the robberies.  He identified easy targets–banks in low-traffic areas close to highways and police district lines.  From his time with the Detroit Police Walter knew that the time it took to relay information across district lines could help them evade detection.  Walter Bates also developed the *modus operandi* for the robberies.  The "inside man" (usually Foster-Bey) would wear clothes that concealed his features and put "crazy-glue" on his hands to avoid leaving fingerprints.  He would then enter the bank, hand the teller a "demand" note, remove any dye packs hidden in the bills he received, and exit within two minutes.[2]  The inside man would then meet the

---

[1] The Bates brothers attempted one robbery prior to bringing in Foster-Bey.  The third person involved in that robbery was Dante Townsend.  This robbery failed when an undetected dye pack exploded as Townsend left the bank.  Afterward, Townsend told Albert Bates that he did not want to attempt a second robbery.  This led the Bates brothers to contact Foster-Bey.

[2] Bates believed that the quality of the picture was not good enough to be useful for forensic purposes absent a direct shot.  Thus, he emphasized that at no point during the robbery should the inside man look directly into a security camera.

getaway car (usually driven by Albert Bates) on a side street and make a quick escape. A second car (usually driven by Walter Bates) would follow closely behind to obscure the first car's license plate and run interference if the cars encountered pursuit.

Following this plan, the trio robbed seven banks in August and September 2002. During this time, Foster-Bey became increasingly frustrated with his share of the proceeds, and he decided to rob banks on the side with an acquaintance named Leroy Plummer. Plummer, however, soon proved to be a less than able partner: on September 18, the pair attempted to rob a bank together, but Plummer failed to remove a dye pack from the bills he received. As a result, Plummer and Foster-Bey had to *literally* launder the money afterwards. On the heels of this experience, Foster-Bey resumed working with Albert and Walter Bates. Together, they committed another seven robberies in September and October.

All the while, local police and the FBI were closing in on the men. Surveillance photos proved to be of better quality than Walter Bates believed, and they enabled police not only to identify Albert Bates and Foster-Bey but also to tie the robberies together based on certain distinctive articles of clothing the pair wore during different robberies. Eyewitness accounts from bank tellers and those living near the banks also helped tie the robberies together, both by identifying the three men involved and the vehicles used–a burgundy Chevy Impala owned by Albert Bates and a burnt orange Jeep Liberty owned by Walter Bates. The saga took its final turn when Leroy Plummer was caught trying to steal an ATM with Foster-Bey (who managed to escape). Plummer agreed to cooperate against Foster-Bey, who in turn agreed to cooperate against Albert and Walter Bates. Police subsequently recovered the Bates' getaway vehicles, both of which contained "crazy glue" stains in places Foster-Bey said he had spilled the glue while preparing for robberies. Police also recovered phone records showing extensive communication among the three men during the string of robberies. The phone contact between the men strongly correlated with the dates and times of the robberies.

On November 7, Albert Bates was indicted for four counts of bank robbery. On August 14, 2003, a superceding indictment added Kevin Foster-Bey as a defendant and

a number of additional counts of bank robbery. On November 26, 2003, a second superceding indictment added Walter Bates as a defendant and charged him and Albert Bates with conspiracy to commit bank robbery and thirteen counts of bank robbery. On September 13, 2005, a third superceding indictment added Dante Townsend as a defendant to the conspiracy charge. It also reduced the total counts of bank robbery to seven, and the substantive counts against Walter Bates to one.[3] Townsend and Foster-Bey pleaded guilty prior to trial, and Foster-Bey testified for the Government at trial.

Albert and Walter Bates were tried jointly in the United States District Court for the Eastern District of Michigan. The jury found Albert Bates guilty of conspiracy to commit bank robbery and five of the seven bank robbery charges against him (Third Superceding Indictment counts 1, 3-5, 7-8). It found Walter Bates guilty of conspiracy to commit bank robbery and of the single count of bank robbery against him (Third Superceding Indictment counts 1 and 8). The district court sentenced Albert Bates to 60 months in prison and sentenced Walter Bates to 70 months. Both now appeal.

## II.

Collectively, Albert and Walter Bates make seven arguments on appeal: (1) the district court erred in denying Albert Bates's motion to sever their trial; (2) the district court improperly conducted voir dire; (3) the district court erred in allowing Leroy Plummer to claim a blanket Fifth Amendment privilege; (4) the district court erred in limiting cross-examination of Kevin Foster-Bey; (5) the district court improperly excluded certain statements made by Plummer and Foster-Bey as hearsay; (6) that evidence of Walter Bates's financial condition should have been excluded as against Albert Bates under Rule 404(b) of the Federal Rules of Evidence; and (7) that the district court failed to comply with the Sentencing Guidelines in sentencing Walter Bates.

Two of these issues require discussion in detail: (1) whether the district court erred in failing to force Leroy Plummer to take the stand to assert his Fifth Amendment

---

[3] Because the government believed Walter planned many of the robberies but did not physically take part in them, he was not charged with a substantive count for every robbery that took place.

privilege; and (2) whether the district court failed to comply with the Sentencing Guidelines in sentencing Walter Bates.

A.      *Leroy Plummer's Blanket Assertion of his Fifth Amendment Privilege*

The longstanding rule of this circuit is that a defendant must take the stand and answer individualized questions in order to invoke his Fifth Amendment privilege. *See In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983) ("A blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions. The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify.").  This presumption against blanket assertions of Fifth Amendment privilege is premised on the common sense notion that a judge must know what the witness believes is incriminating in order to evaluate whether the witness invokes the privilege with "reasonable cause."  As this Court has since recognized, however, when a defendant has a clear entitlement to claim the privilege, forcing the defendant to take the stand is "futile" and thus unnecessary. *United States v. Highgate*, 521 F.3d 590, 594 (6th Cir. 2008); *Davis v. Straub*, 430 F.3d 281, 288 n.4 (6th Cir. 2005); *United States v. Medina*, 992 F.2d 573, 586-87 (6th Cir. 1993).  In such a case, the reason behind the rule does not apply because the court already knows that "reasonable cause" to invoke the privilege exists.

Such was the case here.  When defense counsel sought to put Leroy Plummer on the stand to impeach the testimony of Kevin Foster-Bey, Plummer was charged with robbing a bank with Foster-Bey.  In order to lay a foundation for his proposed testimony, Plummer would have to admit his association with Foster-Bey and that he had extensively discussed robbing banks with him.  These admissions tend to incriminate Plummer, *see Hoffman v. United States*, 341 U.S. 479, 486 (1951), and he thus had a valid Fifth Amendment privilege.  And Plummer's lawyer made it clear that Plummer intended to invoke his privilege.  Indeed, the reason the district court did not force Plummer to take the stand was because his privilege and his intent to invoke his

privilege were so clear.  Under these circumstances, it was not error for the district court to fail to force Plummer to take the stand.  It would have been pointless to do so.

### B.          *The Procedural Reasonableness of Walter Bates's Sentence*

The second issue requiring extended discussion is the procedural reasonableness of Walter Bates's sentence.  We review the district court's sentencing decisions for abuse of discretion. *Gall v. United States*, 128 S. Ct. 586, 594  (2007).  This review involves a dual inquiry into both procedural and substantive reasonableness.  In the context of procedural reasonableness, a district court abuses its discretion when it commits a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* at 597.

Walter Bates challenges the district court's application of a four-level increase in his offense level under U.S. Sentencing Guidelines Manual § 3D1.4 on the grounds that it failed to find "beyond a reasonable doubt" that Walter Bates conspired to commit the substantive conspiracy charges for which Albert Bates was convicted, as required by § 1B1.2(d).  We disagree with this contention.

The counting rule for general conspiracy charges is § 1B1.2(d), which reads: "A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." U.S.S.G. § 1B1.2(d).[4]  This provision is of simple application to conspiracies involving a single object offense.  However, it presents a problem when a criminal defendant is convicted of a general conspiracy charge involving more than one object offense: because guilt for conspiracy may be premised upon a single overt act, a conspiracy conviction does not speak to how many of the charged object offenses the defendant conspired to commit.  To fill this gap, the

---

[4]Robbery under § 2B3.1 is specifically exempted from grouping under § 3D1.2(d), so § 1B1.2(d) applies.

Sentencing Guidelines provide that the Court should make an independent finding as to which object offenses the defendant conspired to commit:

> Particular care must be taken in subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases subsection (d) *should only be applied with respect to an object offense in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense*.

*Id.* Application note 4 (emphasis added). Because this finding is an independent finding of guilt by the judge, the Guidelines provide it must be made as if the court were "sitting as a trier of fact"–i.e. beyond a reasonable doubt. *See* 18 U.S.C. App'x C, Amend. 75 (effective Nov. 1, 1989). Once this finding is made, the conspiracy convictions are counted under § 3D1.4.

As Walter Bates points out, the judge failed to explicitly make such a finding here. However, the § 1B1.2(d) finding need not be explicit. Where it is clear from the record that the sentencing judge *implicitly* found that the defendant conspired to commit the object offenses at issue, the court has complied with § 1B1.2(d). *See United States v. Manges*, 110 F.3d 1162, 1179 (5th Cir. 1997); *United States v. Fisher*, 22 F.3d 574, 577 (5th Cir. 1994); *United States v. McKinley*, 995 F.2d 1020, 1026 (11th Cir. 1993). As in the context of discussing the § 3553(a) factors, where the district court has clearly complied with procedural requirements, it need not say certain magic words in order to meet the baseline requirement of procedural reasonableness. *See, e.g.*, *United States v. Smith*, 505 F.3d 463, 468 (6th Cir. 2007).

Here, the district court made an implicit finding beyond a reasonable doubt that Walter Bates conspired to commit the bank robberies for which Albert Bates was convicted. First, the district court had clearly been informed of the relevant law. The parties had previously briefed this issue, they discussed it at some length during Albert Bates's sentencing hearing the week before, and they did so again at Walter Bates's sentencing hearing. Second, the district court clearly considered which convictions he believed the Bates brothers conspired to commit and made a finding as to which should be counted. At Albert Bates's sentencing hearing, the United States argued that the court

should increase the offense level by five under § 3D1.4 based upon a finding that he conspired to commit robberies beyond the five he was convicted of committing. However, the judge rejected this argument and increased the offense level only by four. This reflects a finding that Albert Bates only conspired to commit the five bank robberies for which he was convicted, because a finding that he committed any additional robberies would have *required* a five level increase under § 3D1.4. Likewise, at Walter Bates's sentencing hearing the district court refused to find that Walter Bates conspired to commit more than five robberies, and applied only a four level increase in the offense level under § 3D1.4. Thus, from the context of Walter Bates's sentencing hearing and that of Albert Bates the week before, the four level increase represents a finding beyond a reasonable doubt that Walter Bates was guilty of conspiracy to commit only five robberies–the one for which he and Albert were both convicted (count 8), plus the four additional robberies Albert Bates was convicted of committing (counts 1, 3-5, and 7).

This makes sense: it was clear from the facts presented at trial and found by the jury that Walter and Albert Bates conspired to rob banks together, and that the robberies Albert Bates was convicted of rose out of that same conspiracy. They were very close together in time, were factually very similar, and they were connected to Walter Bates by both circumstantial evidence and the testimony of co-conspirator Kevin Foster-Bey. In light of these things, it would be difficult for the district court to find that there *was* reasonable doubt as to whether Walter Bates conspired to commit the robberies for which Albert Bates was convicted. Consequently, it was not procedurally unreasonable for the district court to fail to explain its finding in greater detail. The required finding was implicit in what it did and was sufficiently clear from the broader context of the sentencing hearings and the facts found at trial.

## C.     *Remaining Challenges*

The remaining challenges can be disposed of briefly. First, the district court did not commit plain error in denying Albert Bates's motion to sever. There is a presumption in favor of joint conspiracy trials in the federal courts, *Zafiro v. United*

*States*, 506 U.S. 534, 537, 541 (1993), and here, Albert Bates has not shown prejudice from the joint trial.

Second, the district court did not abuse its discretion in limiting duplicative questions from defense counsel during voir dire. These were within the court's "broad discretion" to exclude. *United States v. Phibbs*, 999 F.2d 1053, 1071-72 (6th Cir. 1993).

Third, the district court did nor err in refusing to allow impeachment of Kevin Foster-Bey during cross-examination. The proposed questions regarded his familiarity with the legal system, which had already been brought out in detail. The questions were thus cumulative and within the court's discretion to exclude. *United States v. Lloyd*, 462 F.3d 510, 516 (6th Cir. 2006).

Fourth, the district court's rulings on the proposed hearsay testimony of Leroy Plummer were correct. The proposed hearsay statements were not admissible as a statement against interest under Fed. R. Evid. 804(b)(3). They were either not against the declarant's penal interest or were cumulative and within the discretion of the district court to exclude. Likewise, the hearsay statements were not admissible as a co-conspirator's statement under Fed. R. Evid. 801(d)(2)(E) because they were not spoken during the course of the conspiracy or in furtherance of it, and they were not being offered against a party opponent.

Fifth, the evidence alleged to be improper under Fed. R. Evid. 404(b) was not extrinsic to the case and thus was not subject to the constraints of that rule. *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995).

Finally, the defendants' various theories of government misconduct in connection with the prosecution of Leroy Plummer (and thus the status of his Fifth Amendment privilege) fail because they have offered no evidence to suggest that the Government acted "with the deliberate intention of distorting the fact-finding process" in the Bates trial. *United States v. Talley*, 164 F.3d 989, 997 (6th Cir. 1999).

III.

For the foregoing reasons, we AFFIRM both the convictions and the sentences of Albert and Walter Bates.