[Cite as *State v. Stafford*, 2017-Ohio-7118.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2016-11-219 |
| Plaintiff-Appellee, | : | O P I N I O N |
| | : | 8/7/2017 |
| - vs - | : | |
| | : | |
| JOHN EDWARD STAFFORD, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2016-05-0674

Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Engel & Martin, Mary K. Martin, 5181 Natorp Blvd., Suite 210, Mason, Ohio 45040, for defendant-appellant

**S. POWELL, J.**

{¶ 1} Defendant-appellant, John Edward Stafford, appeals from his conviction in the Butler County Court of Common Pleas after a jury found him guilty of various drug charges, carrying a concealed weapon, and having a weapon while under disability. For the reasons outlined below, we affirm.

{¶ 2} On June 22, 2016, the Butler County Grand Jury returned an indictment

charging Stafford with numerous drug offenses, as well as carrying a concealed weapon, and having a weapon while under disability. The charges arose after Stafford was discovered in possession of 32 grams of methamphetamine, 15 tablets of amphetamine, .608 grams of marijuana, Clonazepam, clear plastic baggies, a digital scale, pill bottles, two cell phones, several hundred dollars in cash, and a loaded firearm, following a traffic stop of the vehicle in which he was a passenger on the afternoon of May 13, 2016 while in Hamilton, Butler County, Ohio. The traffic stop occurred after officers with the Hamilton Police Department, while utilizing a confidential informant to make an undercover drug buy of heroin and methamphetamine from a now convicted drug dealer, K.L., witnessed Stafford engaged in what appeared to be a hand-to-hand drug transaction with a third unknown individual. It is undisputed that this alleged drug transaction occurred in a high-crime area known for illegal drug activity.

{¶ 3} On July 25, 2016, Stafford filed a motion to suppress alleging the traffic stop was unlawful because it was not supported by probable cause or a reasonable, articulable suspicion of criminal activity. The trial court held a hearing on Stafford's motion on August 16, 2016. During this hearing, the trial court heard testimony from Detectives Robert Horton and Gary Crouch, as well as Officers Brian Wynn and Casey Johnson, all of whom were employed by the Hamilton Police Department on the day in question. Following this hearing, the trial court issued its decision denying Stafford's motion to suppress, finding the traffic stop of the vehicle in which Stafford was a passenger was lawful. In so holding, the trial court stated, in pertinent part:

> The Court recognizes from the testimony this was said to be a high-crime area. While [defense counsel] point out that there were several tips that were made, the Court also recollects testimony from Detective Crouch that search warrants had been executed in that area and that he was aware of drug activity in that area for the last ten years.

The Court also heard testimony today that the officers, both Detective Horton and Detective Crouch, observed some kind of a transaction and its [sic] construing the testimony regarding a transaction or the exchange also with the fact that both officers testified that they had much experience in observing hand-to-hand transactions and their opinions followed based upon their experience and training.

So the Court believes that there was reasonable suspicion based on the totality of circumstances to stop the vehicle.

{¶ 4} After denying Stafford's motion to suppress, the matter proceeded to a two-day jury trial concluding on September 14, 2016. At trial, as part of his defense, Stafford called K.L. to testify. Prior to K.L. testifying, it is undisputed that K.L. had been convicted for selling heroin and methamphetamine to Detective Crouch, who, unbeknownst to K.L., was an undercover officer, on the afternoon of May 13, 2016. However, when defense counsel asked K.L. about whether he sold or traded any other drugs to Stafford that day, specifically MDMA, also known as "molly" or "ecstasy," K.L. invoked his privilege against self-incrimination and stated that he did not want to answer any questions "about any other drugs." K.L. later expanded the invocation of his privilege to any additional questions at all. At the request of the state, the trial court then struck K.L.'s testimony and instructed the jury to disregard the same. Stafford then moved for a mistrial, which the trial court denied. Stafford then rested and the case was submitted to the jury for deliberations.

{¶ 5} Following its deliberations, the jury returned a verdict finding Stafford guilty of aggravated trafficking in drugs, two counts of aggravated possession of drugs, possession of drugs, possession of marijuana, possession of drug paraphernalia, having a weapon while under disability, and carrying a concealed weapon. After merging the aggravated trafficking in drugs charge with one of the two counts of aggravated possession of drugs, the trial court sentenced Stafford to an aggregate term of seven years in prison.

{¶ 6} Stafford now appeals, raising four assignments of error for review. For ease of

- 3 -

discussion, Stafford's fourth assignment of error will be addressed out of order.

{¶ 7} Assignment of Error No. 4:

{¶ 8} THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶ 9} In his fourth assignment of error, Stafford argues the trial court erred by denying his motion to suppress. We disagree.

{¶ 10} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. In turn, when reviewing the denial of a motion to suppress, this court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 11} Ohio recognizes two types of lawful traffic stops. *State v. Campbell*, 12th Dist. Butler Nos. CA2014-02-048 and CA2014-02-051, 2014-Ohio-5315, ¶ 25. The first type of lawful traffic stop is a non-investigatory stop in which an officer has probable cause to stop a vehicle because the officer observed a traffic violation. *State v. Moore*, 12th Dist. Fayette No. CA2010-12-037, 2011-Ohio-4908, ¶ 31, citing *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769 (1996). The establishment of probable cause "requires only a

probability or substantial chance of criminal activity, not an actual showing of such activity." *City of Wilmington v. Lubbers*, 12th Dist. Clinton No. CA2013-06-013, 2014-Ohio-3083, ¶ 12, quoting *Illinois v. Gates*, 462 U.S. 213, 243, fn. 13, 103 S.Ct. 2317 (1983). "The focus, therefore, is not on whether an officer could have stopped the suspect because a traffic violation had in fact occurred, but on whether the arresting officer had probable cause to believe that a traffic violation had occurred." *State v. Pfeiffer*, 12th Dist. Butler No. CA2003-12-329, 2004-Ohio-4981, ¶ 23, citing *State v. Terrell*, 12th Dist. Clinton No. CA99-07-020, 2000 Ohio App. LEXIS 4911 (Oct. 23, 2000).

{¶ 12} The second type of lawful traffic stop is an investigative stop, also known as a *Terry* stop, in which the officer has reasonable suspicion based upon specific or articulable facts that criminal behavior is imminent or has occurred. *State v. Bullock*, 12th Dist. Clinton No. CA2016-07-018, 2017-Ohio-497, ¶ 7, citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968). While the concept of "reasonable and articulable suspicion" has not been precisely defined, it has been described as something more than an undeveloped suspicion or hunch, but less than probable cause. *State v. Baughman*, 192 Ohio App.3d 45, 2011-Ohio-162, ¶ 15 (12th Dist.), citing *Terry* at 20-21. The propriety of an investigative stop "must be viewed in light of the totality of the surrounding circumstances, from the perspective of a reasonably prudent police officer on the scene guided by his experience and training." *Id.*, citing *State v. Batchili*, 113 Ohio St. 3d 403, 2007-Ohio-2204, paragraph two of the syllabus; and *State v. Bobo*, 37 Ohio St. 3d 177 (1988), paragraph one of the syllabus.

{¶ 13} Stafford claims the trial court erred by denying his motion to suppress because the officers lacked a reasonable, articulable suspicion of criminal activity to initiate a traffic stop of the vehicle in which he was a passenger. In support of this claim, Stafford argues "the sole basis of the stop was the information relayed about the gun and drugs by the informant [K.L.]," thus requiring the state to provide some evidence as to K.L.'s credibility,

honesty, and reliability. However, contrary to Stafford's claim, the basis of the traffic stop was a not K.L.'s statement that Stafford had drugs and a gun in his possession. Rather, just as the trial court found, the traffic stop was effectuated by Officers Wynn and Johnson after Detectives Horton and Crouch informed them they had just observed what appeared to be Stafford engaged in hand-to-hand drug transaction with an unknown individual in a high crime area known for illegal drug activity. After the transaction was complete, Stafford was observed getting into the passenger side of the vehicle and leaving the scene.

{¶ 14} Based on the totality of the circumstances, and due to their extensive experience and training as narcotics officers, Detectives Horton and Crouch were justified in relaying the suspicious activity they observed to Officers Wynn and Johnson in order for them to initiate an investigatory stop of the vehicle in which Stafford was a passenger. Under the "collective knowledge doctrine," also known as the "fellow officer rule," police officers may develop the reasonable suspicion necessary to affect a traffic stop based on information obtained and relayed by their fellow officers. *State v. Ojezua*, 2d Dist. Montgomery No. 26787, 2016-Ohio-2659, ¶ 30; *State v. Mook*, 9th Dist. Wayne No. 97CA0069, 1998 Ohio App. LEXIS 3238, *7 (July 15, 1998) ("[r]easonable suspicion may exist based upon the collective knowledge of the police when there is reliable communication between the officer supplying the information and the officer acting on that information"). That is exactly what occurred here. In turn, the traffic stop of the vehicle in which Stafford was a passenger was lawful, and therefore, the trial court did not err in denying Stafford's motion to suppress. Accordingly, finding no error in the trial court's decision denying Stafford's motion to suppress, Stafford's fourth assignment of error is without merit and overruled.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED IN EXCUSING THE WITNESS [K.L.] FROM TESTIFYING AND STRIKING HIS TESTIMONY.

{¶ 17} In his first assignment of error, Stafford argues the trial court erred by excusing K.L. from testifying at trial and by striking K.L.'s testimony from the record after K.L. asserted his privilege against self-incrimination. We again disagree.

{¶ 18} The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution declare that no person shall be compelled in any criminal case to be a witness against himself. *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, ¶ 30. The privilege against self-incrimination is accorded liberal construction in favor of the right it was intended to secure; namely, "the right of an individual to force the state to produce the evidence against him or her by its own labor, not by forcing the individual to produce it from his or her own lips." *Id.* at ¶ 31, citing *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, ¶ 43. Although the right against testimonial compulsion provides protection to the accused, "it also applies to witnesses who would incriminate themselves by giving responses to questions posed to them." *Id.*

{¶ 19} "The Ohio Supreme Court has held that when a witness asserts a privilege against self-incrimination, a court may not rely upon the witness's claim alone, but has a duty to determine whether the witness's refusal to answer is justified." *State v. Spangler*, 5th Dist. Fairfield No. 16-CA-12, 2017-Ohio-268, ¶ 30, citing *Arnold*, 2016-Ohio-1595 at ¶ 45, citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814 (1951). A valid assertion exists where a witness has "reasonable cause" to apprehend a real danger of incrimination. *United States v. Apfelbaum*, 445 U.S. 115, 127, 100 S.Ct. 948 (1980). Therefore, to sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer "might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 486-487. The privilege extends to answers which would furnish a link in the chain of evidence, exposing the witness to criminal liability. *Id.* at 486.

{¶ 20} It is undisputed that K.L. invoked his privilege against self-incrimination at trial

when Stafford's defense counsel asked him whether he had sold or traded any other drugs to Stafford than the ones he had sold to Detective Crouch. Stafford does not challenge K.L.'s right to assert his privilege against self-incrimination. What Stafford challenges is the trial court's decision to allow K.L. to make a "blanket assertion" of his privilege against self-incrimination rather than engage in a "question by question analysis" to determine if such invocation of the privilege was valid. We find no merit to Stafford's claim.

{¶ 21} "In general, a witness may not make a blanket assertion of his or her Fifth Amendment privilege, and may not invoke the Fifth Amendment prior to questioning." *Sojic v. Karp*, 2d Dist. Montgomery No. 26664, 2015-Ohio-3692, ¶ 31. In other words, "a blanket assertion of the Fifth Amendment privilege by a witness is not sufficient as the privilege must be asserted by a witness with respect to a particular question, and, in each instance, the court must determine the propriety of the refusal to testify." *Vega v. Tivurcio*, 10th Dist. Franklin No. 14AP-327, 2014-Ohio-4588, ¶ 12. "This presumption against blanket assertions of Fifth Amendment privilege is premised on the common sense notion that a judge must know what the witness believes is incriminating in order to evaluate whether the witness invokes the privilege with 'reasonable cause.'" *United States v. Bates*, 552 F.3d 472, 475-76 (6th Cir. 2009). However, where the witness has a "clear entitlement" to claim the privilege, "forcing the defendant to take the stand is 'futile' and thus unnecessary. In such a case, the reason behind the rule does not apply because the court already knows that 'reasonable cause' to invoke the privilege exists." *Id.*

{¶ 22} After reviewing the record, we find any error that may have occurred by allowing K.L. to make a "blanket assertion" of his privilege against self-incrimination rather than conduct a "question by question analysis" was, at worst, harmless. The same is true regarding the trial court's decision to strike K.L.'s testimony. The record in this case contains overwhelming evidence of Stafford's guilt. This includes evidence indicating Stafford was

seen engaged in a hand-to-hand drug transaction with an unknown individual in a high-crime area known for illegal drug activity just prior to being found in possession of 32 grams of methamphetamine, 15 tablets of amphetamine, .608 grams of marijuana, Clonazepam, clear plastic baggies, a digital scale, pill bottles, two cell phones, several hundred dollars in cash, and a loaded firearm, following a lawful traffic stop of a vehicle in which he was a passenger. Many of these drugs, which had a total street value approximated at nearly $7,500, were located in a backpack Stafford was observed wearing mere minutes before. The driver of the vehicle in which Stafford was a passenger, M.M., also testified that Stafford asked her to "take ownership" of the backpack found in her car, a request M.M. refused because "it was not mine." Therefore, because any error committed by the trial court was, at worst, harmless, we find no merit to Stafford's first assignment of error and overrule the same.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE TRIAL COURT ERRED IN ALLOWING IMPERMISSIBLE HEARSAY.

{¶ 25} In his second assignment of error, Stafford argues the trial court erred by admitting alleged hearsay statements from Detectives Horton and Crouch as to what K.L. said during the undercover drug buy between K.L. and Detective Crouch; i.e., that K.L. had obtained the methamphetamine he sold to Detective Crouch from Stafford – who had a backpack with drugs and a firearm inside – in exchange for a gram of MDMA. We disagree.

{¶ 26} As this court has stated previously, "[t]estimony not offered for the truth, but to explain the actions of a witness to whom the statement was directed, such as to explain the witness's activities, is not hearsay." *State v. Smith*, 12th Dist. Butler Nos. CA2000-05-093 and CA2000-05-095, 2001 Ohio App. LEXIS 2148, *12 (May 14, 2001). Thus, "where statements are offered into evidence to explain an officer's conduct during the course of investigating a crime, such statements are not hearsay." *State v. Blevins*, 36 Ohio App.3d 147, 149 (10th Dist.1987).

{¶ 27} After reviewing the record, including the testimony from both Detectives Horton and Crouch, we find no error for it is clear the disputed testimony was offered into evidence to explain their conduct during the undercover drug buy between Detective Crouch and K.L., as well as the conduct of Officers Wynn, Johnson, and Officer Eric Taylor, a third officer at the scene, in effectuating a lawful traffic stop of the vehicle in which Stafford was a passenger. Stafford's defense counsel even inquired about Detectives Horton's and Crouch's conduct in response to K.L.'s statements to Detective Crouch as part of his cross-examination. Stafford, therefore, can demonstrate no resulting prejudice. Moreover, the fact that the trial court did not give a limiting instruction as it relates to this testimony was also not error, let alone plain error, when considering the overwhelming evidence of Stafford's guilt. Stafford's claim otherwise lacks merit.

{¶ 28} Furthermore, given the fact K.L. was unaware Detective Crouch was serving as undercover officer at the time the alleged hearsay statements were made, K.L.'s statements to Detective Crouch were nontestimonial, and therefore, do not implicate any concerns regarding the Confrontation Clause. *See, e.g., United States v. Mooneyham*, 473 F.3d 280, 286-87 (6th Cir.2007) (co-defendant's out-of-court statements to an undercover officer whose status was unknown to the declarant were nontestimonial); *see also Davis v. Washington*, 547 U.S. 813, 825, 126 S.Ct. 2266 ("statements made unwittingly to a Government informant" are "clearly nontestimonial"). "[T]he Confrontation Clause bars only the admission of 'testimonial' hearsay. *State v. Waver*, 12th Dist. Butler No. CA2015-08-155, 2016-Ohio-5092, 39, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354 (2004). "If testimony qualifies as nonhearsay," such as the case here, "it does not implicate the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 186. Accordingly, finding no error in the trial court's decision, Stafford's second assignment of error is also without merit and overruled.

{¶ 29} Assignment of Error No. 3:

{¶ 30} THE TRIAL COURT ERRED BY NOT DECLARING A MISTRIAL.

{¶ 31} In his third assignment of error, Stafford argues the trial court erred by not declaring a mistrial because he was denied a fair trial "based on the hearsay statements that were impermissibly allowed" and because he was denied the "right to confront witnesses against him."  However, as discussed above, we find no error in the trial court's decision regarding these issues.  Moreover, even if we were to find such error, which we do not, any such error would be harmless due to the overwhelming evidence of Stafford's guilt.  Again, the record indicates that following a lawful traffic stop of a vehicle in which he was a passenger, Stafford was found to be in possession of 32 grams of methamphetamine, 15 tablets of amphetamine, .608 grams of marijuana, Clonazepam, clear plastic baggies, a digital scale, pill bottles, two cell phones, several hundred dollars in cash, and a loaded firearm.  "[I]t is not necessary to declare a mistrial in such circumstances when 'overwhelming evidence' establishes the defendant's guilt."  *State v. Carano*, 9th Dist. Summit No. 26544, 2013-Ohio-1633, ¶ 33, citing *State v. Trimble*, 122 Ohio St.3d 297, 2009 Ohio 2961, ¶ 175. Therefore, due to the overwhelming evidence against him, Stafford's claim that the trial court erred by not declaring a mistrial lacks merit.  Accordingly, Stafford's third assignment of error is overruled.

{¶ 32} Judgment affirmed.


HENDRICKSON, P.J., and M. POWELL, J., concur.