[Cite as *State v. Barton*, 2024-Ohio-1417.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  CASE NO. 13-23-22

  v.

SAMANTHA R. BARTON,

  O P I N I O N

    PLAINTIFF-APPELLANT.

---

**Appeal from Seneca County Common Pleas Court**
**Trial Court No. 22 CR 0185**

**Judgment Affirmed**

**Date of Decision: April 15, 2024**

---

APPEARANCES:

    *Brian A. Smith* **for Appellant**

    *Stephanie J. Kiser* **for Appellee**

**WALDICK, J.**

{¶1} Defendant-appellant, Samantha R. Barton ("Barton"), brings this appeal from the August 16, 2023, judgment of the Seneca County Common Pleas Court convicting her of Endangering Children. On appeal, Barton argues that there was insufficient evidence presented to convict her, that her conviction was against the manifest weight of the evidence, that the State failed to provide an adequate bill of particulars, that the trial court abused its discretion by denying Barton's motion for a mistrial, and that the trial court abused its discretion by denying Barton's motion for a transcript of grand jury testimony. For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On September 28, 2022, Barton was indicted for Endangering Children in violation of R.C. 2919.22(A)/(E)(2)(c), a felony of the third degree. The charge stemmed from a severe sexual assault injury to Barton's 9-week-old child while the child was in the care of Barton and the child's father, Mason Dietrich ("Mason"). Barton pled not guilty to the charge and proceeded to a jury trial, wherein she was convicted of the charge as indicted.

{¶3} On August 16, 2023, Barton was sentenced to serve 30 months in prison. A judgment entry memorializing her conviction and sentence was filed that

same day. It is from this judgment that Barton appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**Because the evidence presented would not allow any rational trier of fact to find the essential elements of the offenses proven beyond a reasonable doubt, Appellant's conviction for Endangering Children was not supported by sufficient evidence.**

**Second Assignment of Error**

**Because the jury lost its way and created a manifest miscarriage of justice in convicting Appellant, Appellant's conviction for Endangering Children was against the manifest weight of the evidence.**

**Third Assignment of Error**

**Because the State failed to provide an adequate Bill of Particulars pursuant to Crim.R. 7(E) and R.C. 2941.07, the trial court abused its discretion in denying Appellant's Motion to Compel Bill of Particulars, in violation of Appellant's right to Due Process and a fair trial under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

**Fourth Assignment of Error**

**Because the trial court committed error prejudicial to Appellant in allowing Mason Deitrich to testify while selectively invoking his Fifth Amendment privilege against self-incrimination, the trial court abused its discretion in denying Appellant's motion for a mistrial, in violation of Appellant's right to confrontation of witnesses under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

**Fifth Assignment of Error**

**Because the trial court acted in an unconscionable, arbitrary, and unreasonable manner in denying Appellant's motion requesting a transcript of the grand jury testimony, the trial court abused its discretion in denying Appellant's Motion for Grand Jury Testimony, in violation of Appellant's right to confrontation of witnesses under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

*First Assignment of Error*

{¶4} In her first assignment of error, Barton argues that there was insufficient evidence to convict her of endangering children.

Standard of Review

{¶5} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671, ¶ 6. Therefore, our review is de novo. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, (1997), fn. 4) following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

## Controlling Statute

**{¶6}** Barton was convicted of Endangering Children in violation of R.C. 2919.22(A)/(E)(2)(c), which reads:

> (A) No person, who is the parent * * * of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *
>
> * * *
>
> (c) If the violation is a violation of division (A) of this section and results in serious physical harm to the child involved, [it is] a felony of the third degree[.]

## Evidence Presented by the State

**{¶7}** A.D. was born 11 weeks premature in December of 2021. She spent 34 days in the NICU, then went home with her mother, Barton, and her father, Mason, to a residence in Seneca County.

**{¶8}** In the early morning hours of March 3, 2022, A.D. was taken to Tiffin Mercy Hospital by Barton and Mason due to injuries to A.D.'s rectum. A.D.'s parents claimed that they discovered the injuries during an 11:30 p.m. diaper change on March 2, 2022. They claimed that they had no idea how the injury occurred, but that they were the only people alone with A.D. that day. Barton speculated that the injuries were from trouble that A.D. had been having with straining during bowel movements. Due to the severity of A.D.'s injuries, A.D. was promptly transported by ambulance to ProMedica Toledo Hospital.

{¶9} Numerous medical professionals testified at trial regarding A.D.'s injuries. One doctor described A.D.'s injuries as follows:

> Well, there was a huge tear from the anal opening extending towards the vagina and posterior directly away from the vagina that is not explained by anything other than something being shoved in that area.

(Tr. at 155). The same doctor testified that it was the "most severe anal rectal trauma I've taken care of." (*Id.* at 156).

{¶10} A separate pediatrician reviewed the injuries to A.D. and explained that constipation or straining would not cause the injuries; rather, the injury had to "be some foreign object forcefully inserted into her rectum." (Tr. at 170). The pediatrician testified to a reasonable degree of medical certainty that A.D. "had at least two severe perianal lacerations and that was due to forceable [sic] trauma, penetration and sexual abuse." (*Id.* at 171). The pediatric nurse practitioner who evaluated A.D. indicated that the injury was consistent with sexual assault, specifically an insertion injury from something larger than a finger. (Tr. at 144). Medical professionals were consistent in testifying that the injury was caused from something being inserted into A.D. causing injuries that required surgery.

{¶11} Law enforcement officers spoke with Barton and Mason, getting the details of everything that had occurred in the day prior to A.D. coming to the hospital. The time when the injuries occurred could be narrowed slightly because at approximately 1 p.m. on March 2, 2022, A.D. had her two-month "well care child exam." A.D. was evaluated by a pediatrician and the pediatrician had no concerns

for A.D.'s health or well-being at that time. During the exam, A.D. weighed 6 pounds and 13 and ½ ounces.

{¶12} According to Barton, after the exam, Barton and Mason returned home with A.D. At approximately 7:30 p.m., A.D.'s diaper was changed with no issues. Two friends of Barton, Emily and Abby, stopped by the residence from approximately 9 p.m. until 10:15 p.m. Emily and Abby needed someone to foster their dog and Barton indicated she was willing. Although both Emily and Abby held A.D., neither woman was alone with A.D.

{¶13} At 11:30 p.m., Barton and Mason went to change A.D.'s diaper. At that time, they claimed they first noticed that A.D.'s rectum was "gashed." Because of the blood and seeming severity of the injury, Barton and Mason immediately drove A.D. to Tiffin Mercy Hospital.

{¶14} Barton told police that she did not cause A.D.'s injuries and she did not believe Mason caused A.D.'s injuries. Barton was adamant that she did not hurt A.D. She stated there was "no chance" anything happened at the house on March 2nd.

{¶15} The officer interviewing Barton testified that Barton was defensive of causing A.D.'s injuries and Barton seemed to distance herself from A.D. by not referring to her by name. During the interview, Barton also vouched for Mason "100 percent," claiming that he would not hurt "that little one."

{¶16} Barton told one officer that A.D. was never out of her sight during the afternoon/evening prior to the injuries, including when Barton went to the bathroom. Barton also stated that while she was preparing things in the kitchen at night, Mason walked "loops" around the residence while carrying A.D. to stop her from fussing.

{¶17} Barton agreed to take a stipulated polygraph examination, which was conducted on April 18, 2023, by an expert in polygraph examination. During the examination, Barton denied physically injuring A.D., and she denied seeing anyone injuring A.D. The polygraph examiner explained scoring of the examination, indicating that a "score" of "minus four or larger is deceptive." (Tr. at 234). Barton scored at a "minus 14." According to the polygraph examiner, Barton's "specific reactions [were] indicative of deception, and they appeared on the subject charges and relevant questions[.] * * * [I]t is to be considered therefore that the person did not tell the truth during the test." (*Id*. at 233).

{¶18} The polygraph examiner's results were independently evaluated by another polygraphist with BCI. The reviewer scored Barton's examination as "a negative 20." (Tr. at 246). The reviewer indicated that in his opinion the charts were indicative of deception.

{¶19} A search warrant was executed on Barton and Mason's residence. During the search, officers located "[a] blanket that appears to have some kind of blood on it." (Tr. at 257). In addition, there was "a bottle of lubricant on the

nightstand of what appeared to be the child's room."[1] (*Id*.) The lubricant was called "Booty Eaze." (*Id*. at 258).

Analysis

**{¶20}** Barton argues the State failed to prove either that Barton created a substantial risk to the health or safety of A.D. or that Barton violated a duty of care, protection or support. In addition, Barton contends there was no evidence that she acted recklessly, which is the mental culpability element required for a conviction of Endangering Children under R.C. 2919.22(A). *State v. McGee*, 79 Ohio St.3d 193 (1997), at syllabus.

**{¶21}** Recklessly is defined in R.C. 2901.22(C) as follows:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

**{¶22}** Here, Barton claimed that she was with A.D. the entire day following the appointment with A.D.'s pediatrician. At some point between roughly 1 p.m. March 2, 2022, and approximately 11:30 p.m. 2022, A.D. suffered a "severe" anal injury due to being sexually assaulted by something "larger than a finger."

---

[1] We note that the photographs show that A.D.'s bed was in the same bedroom as Barton and Mason's bed. However, in the room described by the officer as "the child's room" there was a rocking chair, and some children's toys and a swing.

{¶23} We find that the duty of care, protection, and support required of a parent is a dynamic duty based in significant part on the age of the child. At the time, A.D. was two months old, less than seven pounds and had been out of the hospital for less than two weeks. Accordingly, the level of the duty of care, protection, and support required was at its highest point. A.D. was entirely helpless and completely dependent upon her parents for everything and, therefore, a reasonable factfinder could conclude, based on the evidence presented, that Barton violated her duty of care, protection, and support by either causing the injury to A.D. or failing to intervene to stop the injury given that Barton claimed she was with A.D. the entire day.

{¶24} Moreover, the polygraph examination produced by the State indicated that Barton was being deceptive on the relevant questions. Thus when Barton denied causing the injuries or knowing who caused the injuries to A.D., a reasonable factfinder could determine she was lying.

{¶25} Importantly, in a sufficiency of the evidence inquiry, we are required to look at the evidence in a light most favorable to the State. When conducting such an analysis, we find that a reasonable factfinder could determine beyond a reasonable doubt that Barton recklessly created a substantial risk to the health and safety to A.D. by violating a duty of care, protection or support. Therefore, Barton's first assignment of error is overruled.

*Second Assignment of Error*

**{¶26}** In her second assignment of error, Barton argues that even if there was sufficient evidence presented to convict her, her conviction was against the manifest weight of the evidence.

Standard of Review

**{¶27}** In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

**{¶28}** Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Evidence Presented by the Defense

{¶29} Barton presented the testimony of an expert in polygraph examination who separately conducted an examination of Barton. The examiner testified that in his review, he found Barton to be truthful when she denied injuring A.D. and denied knowing how A.D. was injured. However, the expert testified that due to a computer crash, he lost his polygraph charts and thus the examination could not be reviewed by anyone.

{¶30} Barton also testified at trial. She claimed that Mason's testimony was "awful" and that she had previously believed him when he said he did not hurt A.D. She testified at trial that Mason must have caused the injury. Further, Barton testified that at the time of the injury, she felt indebted to Mason because they lived in a home owned by Mason's parents and she could not afford to live on her own. Barton also testified that she had another child with Mason after the injuries to A.D.

{¶31} Barton testified that on the evening in question Mason walked A.D. around the house for 15-20 minutes out of her eyesight. Barton claimed that when she told an officer that A.D. was never alone on the night in question, she meant that there was always someone at home with her. Barton testified that because A.D. had been dealing with constipation issues, she "didn't even consider the possibility of something having happened to [A.D.]," notwithstanding the medical reports. (Tr. at 336).

Analysis

**{¶32}** While Barton contends that the jury clearly lost its way by convicting her of endangering children, the jury was able to see and hear the testimony of the polygraph examiners and the jury was able to evaluate Barton's denials directly. The jury was thus able to observe the demeanor of both Barton and Mason and determine whether they were being truthful, regardless of whether the jury factored in the information received from the "conflicting" polygraph examinations.

**{¶33}** Simply put, there was a "severe" sexual assault that was perpetrated on A.D. while A.D. was in the care of Barton and Mason. Despite the injury being an "insertion" injury, Barton initially claimed that she had no idea how the injury occurred and that she believed 100 percent that Mason did not cause the injury. She changed her story at trial, accusing Mason for the first time.

**{¶34}** Ultimately, the jury did not believe Barton's attempts to minimize her conduct, and the jury's determination is supported by the State's peer-reviewed polygraph examiner, and the testimony of Barton's own mother, who opined that Barton was capable of causing A.D.'s injuries.

**{¶35}** In sum, this is not the exceptional case where the jury clearly lost its way or created a manifest miscarriage of justice. Therefore, Barton's second assignment of error is overruled.

*Third Assignment of Error*

**{¶36}** In her third assignment of error, Barton argues that the State failed to provide an "adequate" bill of particulars.

Relevant Authority

**{¶37}** "The Ohio Constitution explicitly provides that a defendant has the right to know the nature of the accusation being made by the state: 'In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof * * *.'" *State v. Haynes*, 171 Ohio St.3d 508, 2022-Ohio-4473, 218 N.E.3d 878, ¶ 18, quoting Ohio Constitution, Article I, Section 10. "Historically, this right was satisfied by detailed indictments. But with the advent of short-form indictments, bills of particulars became necessary in some cases to give the accused specifics as to what conduct the state was alleging constituted the offense, so that the accused could mount a defense." *Id.* "[T]he exact contours of that right are procedurally specified by Crim.R. 7(E)," *id.* at ¶ 19, which states:

> When the defendant makes a written request within twenty-one days after arraignment but not later than seven days before trial, or upon court order, the prosecuting attorney shall furnish the defendant with a bill of particulars setting up specifically the nature of the offense charge[d] and of the conduct of the defendant alleged to constitute the offense.

**{¶38}** "There are no exceptions to the requirement; the state must provide a bill of particulars on a defendant's request, even when the prosecutor believes that

the defendant is able to glean the nature and cause of the accusation against him from the discovery the state provided or from some other source." *Haynes* at ¶ 26. "The defendant, after all—not the prosecutor—is best situated to know whether or not he understands the accusation against him." *Id.*

Analysis

**{¶39}** In this case, Barton filed multiple requests for a bill of particulars. The State provided a bill of particulars, then provided a second bill of particulars. Several months later, Barton filed a motion to compel a more specific bill of particulars, arguing that the bill of particulars provided simply restated the indictment. Barton argued that it was not clear whether it was being alleged that Barton harmed A.D. herself or recklessly endangered A.D. by leaving her in Mason's care.

**{¶40}** The trial court filed an entry denying Barton's motion to compel, indicating that the bill of particulars that had been provided was in compliance with the Criminal Rules. Barton claims that the trial court erred, and that the bill of particulars was not compliant with the Criminal Rules.

**{¶41}** Here, the bill of particulars stated, in pertinent part, as follows:

The conduct of the Defendant which is alleged to constitute the offense charged in the indictment is as follows: on or about the 2nd day of March, 2022 at 10725 W TR 41 in the Township of Jackson, Seneca County, Ohio, the Defendant, Samantha R. Barton did being a parent, guardian, custodian or person having custody or control or person in loco parentis of a child under eighteen years of age, to wit: Jane Doe being less than one year old, did recklessly create a substantial risk to the health or safety of the said Jane Doe by violating a duty of care, protection or support; namely, the said Defendant failed

to protect her child, Jane Doe, from physical and/or sexual abuse that resulted in serious physical harm to the said Jane Doe.

(Doc. No. 27).

**{¶42}** Barton argues that the bill of particulars was deficient because it did not specifically describe how she recklessly created a substantial risk to the health and safety of the child. She seemed to be requesting a definition of what acts specifically constituted her recklessness. However, we emphasize that the purpose of a bill of particulars is not to provide the accused with specifications of evidence or to serve as a substitute for discovery. *State v. Avery*, 126 Ohio App.3d 36, 709 N.E.2d 875 (3d Dist.1998). Here, the bill of particulars identified the perpetrator, the victim, the date, and the elements of the offense. We find no error with the trial court's determination that the bill of particulars was adequate.

**{¶43}** Moreover, even if we did agree that the bill of particulars was not detailed as it could have been, Barton does not demonstrate any prejudice that would warrant reversal. The prosecutor in her opening statement reiterated the State's theory of the case when she indicated: "While we cannot prove that [Barton] caused the injury to [A.D.], she either caused it or she saw it happen and failed to protect [A.D.]." (July 5, 2023 Tr. at 108) In response, Barton argued at every opportunity that the State's inability to prove one act or the other should lead the jury to find that the State failed to prove the offense beyond a reasonable doubt and that Mason

was the one who actually harmed A.D., thus absolving her of any criminal responsibility.

**{¶44}** In sum, we do not find that the bill of particulars provided was deficient, but even if it was, Barton has not demonstrated any prejudice. Therefore, her third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶45}** In her fourth assignment of error, Barton argues that the trial court abused its discretion by denying her motion for a mistrial. More specifically, Barton argues that the trial court erred by permitting Mason to selectively invoke his fifth-amendment privilege against self-incrimination, and that the trial court should have granted a mistrial on this basis.

Standard of Review

**{¶46}** We review the denial of a motion for a mistrial under an abuse of discretion standard. *State v. Shoaf*, 3d Dist. Hancock Nos. 5-21-21, 5-21-22, 2022-Ohio-3605, 199 N.E.3d 43, ¶ 46. Mistrials should only be granted in situations where a fair trial becomes impossible. *Id.*

Relevant Authority

**{¶47}** "The Ohio Supreme Court has held that when a witness asserts a privilege against self-incrimination, a court may not rely upon the witness's claim alone, but has a duty to determine whether the witness's refusal to answer is justified." *State v. Spangler*, 5th Dist. Fairfield No. 16–CA–12, 2017–Ohio–268, ¶

30, citing *State v. Arnold*, 147 Ohio St.3d 138, 2016–Ohio–1595 at ¶ 45, citing *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814 (1951). A valid assertion exists where a witness has "reasonable cause" to apprehend a real danger of incrimination. *United States v. Apfelbaum*, 445 U.S. 115, 127, 100 S.Ct. 948 (1980). Therefore, to sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer "might be dangerous because injurious disclosure could result." *Hoffman*, 341 U.S. at 486–487. The privilege extends to answers which would furnish a link in the chain of evidence, exposing the witness to criminal liability. *Id*. at 486.

{¶48} "In general, a witness may not make a blanket assertion of his or her Fifth Amendment privilege, and may not invoke the Fifth Amendment prior to questioning." *Sojic v. Karp*, 2d Dist. Montgomery No. 26664, 2015–Ohio–3692, ¶ 31. In other words, "a blanket assertion of the Fifth Amendment privilege by a witness is not sufficient as the privilege must be asserted by a witness with respect to a particular question, and, in each instance, the court must determine the propriety of the refusal to testify." *Vega v. Tivurcio*, 10th Dist. Franklin No. 14AP–327, 2014–Ohio–4588, ¶ 12; *State v. Stafford*, 12th Dist. Butler No. CA2016-11-219, 2017-Ohio-7118, ¶ 21. "This presumption against blanket assertions of Fifth Amendment privilege is premised on the common sense notion that a judge must know what the witness believes is incriminating in order to evaluate whether the witness invokes

the privilege with 'reasonable cause.'" *United States v. Bates*, 552 F.3d 472, 475–76 (6th Cir. 2009).

Analysis

**{¶49}** Barton argues that the trial court erred by permitting Mason to "pick and choose" which questions he wished to answer when he testified at trial. (Appt.'s Br. at 21). For context, Mason provided preliminary testimony then invoked his privilege against self-incrimination when asked certain questions about harming A.D. Barton contends that this selective application of the Fifth Amendment Privilege was inappropriate and prejudiced her.

**{¶50}** First, the "selective application" of the Fifth Amendment Privilege is not inappropriate. As stated previously, "a blanket assertion of the Fifth Amendment privilege by a witness is not sufficient as the privilege must be asserted by a witness with respect to a particular question, and, in each instance, the court must determine the propriety of the refusal to testify." *Vega v. Tivurcio*, 10th Dist. Franklin No. 14AP–327, 2014–Ohio–4588, ¶ 12. Thus, we reject Barton's assertion that there was some issue with Mason answering some questions and invoking his Fifth Amendment Privilege to others, because that is precisely how the privilege is supposed to work.

**{¶51}** Second, Barton is unable to establish any prejudice here as Mason ultimately testified that he had A.D. alone sometimes, that he and Barton "discovered" the injury at the same time, and that he did not believe Barton created

a substantial risk to the health and safety of A.D. Thus in some ways, Mason's testimony could have aided Barton's defense if the jury believed Mason and Barton.

**{¶52}** Given that there was no error here and no prejudice, we find that the trial court did not abuse its discretion by denying Barton's motion for a mistrial. Therefore, Barton's fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶53}** In her fifth assignment of error, Barton argues that the trial court abused its discretion by denying her request for a transcript of grand jury testimony.

Standard of Review

**{¶54}** We review a trial court's decision on whether to release a transcript of grand jury testimony under an abuse of discretion standard. *State v. Hinkle*, 3d Dist. Hardin No. 2020-Ohio-5571, ¶ 51.

Analysis

**{¶55}** The Supreme Court of Ohio addressed the potential disclosure of grand jury testimony in *State v. Greer*, 66 Ohio St.2d 139 (1981), holding, "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." *Greer* at paragraph two of the syllabus. A particularized need is established "when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny the defendant a fair

-20-

trial." *State v. Sellards*, 17 Ohio St.3d 169, 173 (1985). Determining whether a particularized need exists is a matter within the trial court's discretion. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 141.

**{¶56}** In this case, Barton argues that she needed the grand jury testimony in order to determine the conduct she was alleged to have committed that constituted the offense. Similar to her argument regarding her request for a more specific bill of particulars, Barton contends that she was not aware of the exact nature of the charge against her.

**{¶57}** In reviewing her arguments, we have already determined that the bill of particulars in this case was sufficient, thus Barton had proper notice of the charge. As the grand jury proceedings are secret, Barton had to show a particularized need for the testimony, and she has not done so. In fact, she has not established any need whatsoever. Therefore, her fifth assignment of error is overruled.

*Conclusion*

**{¶58}** Having found no error prejudicial to Barton in the particulars assigned and argued, her assignments of error are overruled and the judgment of the Seneca County Common Pleas Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/hls**